**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TRAVIS SMITH, ) | |
| ) | CASE NO. 1:12-cv-00831 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Travis Smith ("Smith") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On August 12, 2009, Smith filed an application for SSI alleging a disability onset date of June 1, 2009. (Tr. 10.) His application was denied both initially and upon reconsideration. Smith timely requested an administrative hearing.

On August 17, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Smith, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 10.) On September 23, 2011, the ALJ found Smith was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr, 20.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age twenty-four (24) at the time of his administrative hearing, Smith is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). (Tr. 19.) Smith has a high school education and past relevant work as a fast food worker. *Id*.

### *Hearing Testimony*

At the hearing, Smith testified as follows:

- He tried working at a number of jobs, but could not follow instructions or orders. He felt his bosses treated people "like slaves," without "dignity and respect." He lost his last job after hitting his manager. (Tr. 46, 48.)

- He never had a job for more than six or seven months. (Tr. 47.) He previously worked at Pizza Hut, Mr. Hero, Long John Silver's, and several jobs obtained through a temp agency. (Tr. 48-52.)

- After high school, he attended college but was only able to complete four credits. (Tr. 53.) He was enrolled in school at the time of the hearing. (Tr. 54.)

- His prescribed medications included Geodon, Tramadol, and Prednisone. (Tr. 57.) He has gained fifty pounds since he started his medications. (Tr. 62.)

- He had learned to control his anger as it relates to his wife, but not as it relates to others. He was involved in a physical altercation a week earlier. (Tr. 59-60.)

- He smokes marijuana "every three or four days 'cause I don't have any money to get it ..." (Tr. 63.) He drinks alcohol only on weekends. (Tr. 64.) He told his doctors about his marijuana and alcohol use. They never told him to stop

>> smoking marijuana, but suggested that he should "slow down" with the drinking. (Tr. 65.)

The ALJ posed the following hypothetical to the VE:

> Assume an individual the claimant's age, education, and work experience who has no exertional limitations but is limited to simple, routine, and repetitive tasks and a work environment free of fast-pace production requirements, involving only simple work-related decisions with few, if any, work place changes. Additionally, the individual would be limited to no more than occasional and superficial contact with the public and co-workers.

(Tr. 72.)

The VE testified that the hypothetical person could perform Smith's past relevant work as he performed it, but not according to the description contained in the Dictionary of Occupational Titles ("DOT"). (Tr. 72.) However, the VE identified a number of jobs in the national economy that such a person could perform and gave the following examples: cleaner II (DOT 919.687-014), laundry worker II (DOT 361.685-018), cook helper (DOT 317.687-010), cafeteria attendant (DOT 311.677-010), and cleaner/housekeeper (DOT 323.687-014). (Tr. 72-73.) In a second hypothetical, the ALJ asked the VE to assume an individual who cannot sustain sufficient concentration, persistence, or pace, and who would need simple routine tasks on a regular and continuing basis. (Tr. 73-74.) The VE testified that such an individual would be unemployable. (Tr. 74.)

Smith's counsel asked the VE how verbal altercations with threats of physical violence in the first six months of employment would affect a person's employability. (Tr. 74.) The VE testified that such an individual would be unable to maintain or retain employment. (Tr. 75.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits when he establishes disability within

3

the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Smith established medically determinable, severe impairments, due to "major depression, intermittent explosive disorder, mixed personality disorder, ADHD, bipolar disorder, antisocial personality traits, and oppositional defiant disorder." (Tr. 12.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Smith was found capable of performing his past relevant work, and was also determined to have a Residual Functional Capacity ("RFC") for the full range of work

at all exertional levels with certain non-exertional limitations. (Tr. 19-20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Smith is not disabled. *Id*.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")

In addition to considering whether the Commissioner's decision was supported by

substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physicians*

Smith asserts that the ALJ erred by failing to accord proper weight to the opinions of two treating psychiatrists, Jaina Amin, M.D., and Eduardo D. Vasquez, M.D. (ECF No. 16 at 8-11.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[1] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

---

[1] Pursuant to 20 C.F.R. § 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

### 1. Dr. Amin

With respect to Dr. Amin, Smith argues that the ALJ failed to give good reasons for rejecting her mental RFC assessment of March 20, 2011. (ECF No. 16 at 8-9.) Therein, Dr. Amin reported that Smith had poor ability to: follow work rules; use judgment; maintain regular attendance and be punctual within customary tolerances; deal with the public; relate to co-workers; interact with supervisors; function independently without special supervision; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stresses; complete a normal workday or workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex job instructions; socialize; behave in an emotionally stable manner; relate predictably in social situations; manage funds/schedules; and, leave home on his own. (Tr. 317-18.) She also felt that Smith had fair ability to: maintain attention and concentration for extended periods of 2 hour segments; respond appropriately to changes in routine settings; and, understand, remember and carry out both detailed and simple (but not complex) job instructions. *Id*. Dr. Amin based her assessment on Smith's bipolar disorder, which contributes to poor judgment and impulsivity, and his problems with authority and following rules. (Tr. 318.)

The ALJ assigned "little weight" to Dr. Amin's opinion, "as her notations regarding the claimant's mental status, including his cooperative behavior and general improvement in anger control, is not consistent with her assessment." (Tr. 19.) The ALJ offered two additional reasons for ascribing minimal weight to Dr. Amin's Opinion: (1) Smith's repeated non-compliance with reference to prescribed medications; and, (2) the assessment appeared to be

based on Smith's subjective reports of his symptoms rather than objective medical findings. *Id.*

Smith argues that the ALJ failed to perform a "non-compliance analysis" as required by the regulations. (ECF No. 16 at 8-9.) Smith, however, fails to cite any regulation requiring a specific mode of non-compliance analysis.[2] *Id.* Instead, Smith cites a Sixth Circuit decision, wherein it was observed that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (*citing Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009). The *White* decision, however, does not prohibit a finding of non-compliance, nor does this Court construe it as establishing a *per se* rule that the existence of any mental impairment(s) constitutes an "acceptable reason" for failing to follow prescribed treatment under 20 C.F.R. § 416.930(c). The ALJ's finding of non-compliance with treatment is supported by multiple citations to Smith's medical records. (Tr. 16-17.) Moreover, as discussed below, the ALJ articulated other good reasons beyond non-compliance for rejecting the limitations assessed by Dr. Amin.

Smith also argues that the functional limitations assessed by Dr. Amin are not inconsistent with her treatment records. (ECF No. 16 at 8-9.) Smith, however, simply offers a different interpretation of the evidence. As noted in the ALJ's opinion, however, the medical records are largely the product of Smith's own recitation of his symptoms. Both sides point to different

---

[2] Though Smith has not identified any applicable regulation, Smith may be alluding to 20 C.F.R. § 416.930(a), which states that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work ..." Failure to follow prescribed treatment, without a good reason, will result in a finding that a claimant is not disabled. § 416.930(b).

9

evidence of record. This Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (*quoting Key v. Callahan*, 109 F .3d 270, 273 (6th Cir.1997)). A reviewing court, like this one, does not conduct a *de novo* review, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 468 (6th Cir.2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984); *Rogers v. Astrue*, 2012 WL 639473 (E.D. Ky. Feb. 27, 2012).

The ALJ claimed not to ascribe much weight to Dr. Amin's mental RFC assessment, because he concluded that it appeared to be based on Smith's subjective reports of his symptoms rather than objective medical findings. (Tr. 19.) One of the factors the ALJ should consider in deciding the weight to ascribe a treating source's opinion is whether the opinion is well-supported by medical signs and laboratory findings, and is consistent with the record as a whole. The Court cannot conclude that the ALJ erred by finding that the treating source's opinion was based primarily on Smith's self-professed symptoms. The mere fact that a physician records a patient's subjective description of alleged symptoms does not convert those statements into a physician's opinion. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx.149, 156 (6th Cir. 2009) (finding treating physician was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....") Here, the ALJ points out that "psychiatric records consistently describe [Smith] as cooperative, and he had no problems relating with any of his treating providers." (Tr. 14.)

10

Overall, the ALJ found that Smith's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ultimate RFC. (Tr. 15.) More specifically, the ALJ found that "although the evidence of record does document significant mood swings and anger issues, the objective evidence as a whole does not fully support the severity of the claimant's allegations regarding his inability to focus, deal with people, or withstand the stress of work." (Tr. 17.) Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). An ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[3] The ALJ need not analyze all seven factors, but should show that he

---

[3] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other

considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Smith, notably, has not challenged the propriety of the ALJ's credibility finding. The ALJ's opinion addresses some of Smith's daily activities, including attending classes, playing basketball, and maintaining friendships. (Tr. 14-15.) The ALJ also discussed some of the factors that precipitate Smith's anger and lack of motivation, notably his marijuana abuse and alcohol consumption. (Tr. 15-18.) As far as treatment, the ALJ discussed Smith's non-compliance with medication and failure to attend counseling. (Tr. 16.) Thus, the ALJ's credibility analysis sufficiently discussed the relevant factors under SSR 96-7p. In conclusion, with respect to Dr. Amin's functional capacity assessment, this Court finds that the ALJ gave sufficient reasons for rejection. Essentially, the ALJ found that, because it was based on Smith's less-than-credible subjective complaints, the March 2011 assessment by Dr. Amin was not well-supported by the objective medical evidence or consistent with the record as a whole. The Courts sees nothing improper or unreasonable about such a determination.

### 2. Dr. Vazquez

Smith also argues that the ALJ erred by failing to identify the weight he ascribed to Dr. Vazquez's opinion. While it is true that the ALJ never explicitly articulates a specific level of weight given to Dr. Vazquez's opinion, this Court does not perceive any error. According to Smith's brief, Dr. Vazquez diagnosed him with major depression, intermittent explosive

---

than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

disorder, and mixed personality disorder. (ECF No. 16 at 4, Tr. 213.) The ALJ credited all of these diagnoses by listing major depression, intermittent explosive disorder, and mixed personality disorder among Smith's impairments. (Tr. 12.) Where an ALJ plainly adopts the diagnoses offered by a treating physician, this Court will not find error simply because the ALJ did not explicitly state that it was doing so.

Furthermore, Dr. Vazquez never offered an assessment as to Smith's work-related functional limitations. The nearest piece of evidence representing a functionality assessment is a treatment note ascribing Smith a Global Assessment of Functioning ("GAF") score of 80 in 2009.[4] (Tr. 213, 288.) There is no inherent inconsistency between this score and the RFC. Smith emphasizes that on one occasion, "Dr. Vazquez reported that Plaintiff had a homicidal rage and wanted to hurt others." (ECF No. 16 at 10.) Smith avers that his homicidal rage is inconsistent with the ability to engage in superficial contact with co-workers and the public. *Id*. Here also, the statement in the treatment notes appears to be a self-reported assertion by Smith. The ALJ characterized it as such. (Tr. 16.) Not only does Smith ask the Court to construe his own statement as that of Dr. Vazquez, but he also asks the Court to convert a single notation in the medical records into a specific functionality assessment that would prohibit any contact with co-workers or the public. This Court declines to convert Dr. Vazquez's treatment notes into a mental RFC assessment. Because the ALJ adopted the only opinions Dr. Vazquez offered, no reversible error occurred.

---

[4] Even if the score were construed as reflecting "60," a GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

*Reviewing Physicians*

In his second assignment of error, Smith argues that ALJ erred by not actually adopting the entire reviewing opinion of David Demuth, M.D., despite purporting to assign it "great weight."  (ECF No. 16 at 11-12; Tr. 19.)  Smith argues that the ALJ failed to include one of the work place limitations assessed by Dr. Demuth: that Smith cannot work in situations where he needs to resolve conflicts or maintain a friendly and persuasive demeanor.  (ECF No. 16 at 11; Tr. 256.)  The Commissioner asserts that the limitations found by Dr. Demuth are consistent with the ultimate RFC adopted by the ALJ.  (ECF No. 17 at 8-9.)

The ALJ found that Smith was capable of performing a full range of work at all exertional levels with the following non-exertional limitations.  Smith was limited to simple, routine, repetitive tasks in a work environment free of fast-pace production requirements, involving only simple work-related decisions, with few if any workplace changes and *with only occasional and superficial contact with co-workers and the public*.  (Tr. 15) (emphasis added).

First, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 416.945(a).  "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence."  *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  As such, the ALJ was under no obligation to include the aforementioned limitation found by Dr.

Demuth.

Second, while the ALJ ascribed "great weight" to the opinions of the State agency mental health experts, which would include Dr. Demuth, at no point did the ALJ state that he was adopting each and every portion of Dr. Demuth's opinion. Moreover, the ALJ was not obligated to discuss each portion of the opinion. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507-08 (6th Cir. 2006) (*quoting Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted)). Since it is undisputed that Dr. Demuth was merely a reviewing physician, his specific opinion – that Smith cannot work in situations where he needs to resolve conflicts or maintain a friendly and persuasive demeanor – was not entitled to the presumptive weight accorded a treating physician's opinion.

Finally, the Court is unconvinced that the ALJ's RFC does not accommodate such a limitation by restricting Smith to work that requires only occasional and superficial contact with co-workers and the general public. The Court sees no apparent inconsistency between the RFC and Dr. Demuth's statement that Smith cannot work in situations where he needs to resolve conflicts or maintain a friendly and persuasive demeanor. Smith attempts to equate the relevant portion of Dr. Demuth's opinion with his counsel's hypothetical at the hearing. (ECF No. 16 at 12.) Therein, Smith's counsel asked the VE whether an employee who engaged in verbal altercations with threats of violence against a supervisor would be employable. (Tr. 74.) The

15

Court finds this comparison is untenable. Nothing in Dr. Demuth's limitation suggests that Smith can only work in a setting where threats of violence are permitted or tolerated. Smith also asserts that the ALJ failed to include a specific limitation to only occasional and superficial interaction with supervisors, as opposed to the general limitation regarding co-workers. The Court again finds no error as the term co-workers does not necessarily exclude one's bosses or managers. Notably, Dr. Demuth's functional capacity assessment does not distinguish between supervisors and co-workers, and simply states that interaction "with others" should be occasional and superficial.[5] (Tr. 256.)

As such, Smith's second assignment of error is without merit.

***Listing 12.04***

In his final assignment of error, Smith argues that substantial evidence proves he met Listing 12.04. (ECF No. 16 at 12.) Smith asserts that if Dr. Amin's opinion is ascribed appropriate weight, the evidence would support the conclusion that he met the listing. Such an argument is not cognizable, as Smith evokes an incorrect standard of review. An ALJ's decision will be affirmed if it is supported by substantial evidence. It is immaterial if substantial evidence also supports a contrary position. *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence supports claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when

---

[5] In the category of social interaction, Smith was "moderately limited" in both his ability to accept instructions and respond appropriately to criticism from supervisors, as well as in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 255.) As such, there was no need to differentiate between the level of interaction between supervisors and peers where the limitations are identical.

substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion). The substantial evidence standard "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545. Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports his position and contradicts the finding of the ALJ. Moreover, because the ALJ did not err by rejecting Dr. Amin's assessment, Smith's argument is moot.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: December 18, 2012